THE FARMERS AND MECHANICS SAVINGS BANK OF THE CITY OF LOCKPORT, Plaintiff, *v.* THE EAGLE BUILDING COMPANY and Others, Defendants.

Supreme Court, Chautauqua County, November 15, 1934.

*Storrs & Storrs*, for the plaintiff.

*Ernest Cawcroft*, for himself and Eagle Building Company.

*H. Stanley Turnquist*, for the Jamestown Aerie No. 816, Fraternal Order of Eagles.

*Jackson & Durkin*, for the Bank of Jamestown.

*Carlson & Alessi*, for Schofield Tordoff.

*James A. Hughes*, for Charles A. Haas.

NOONAN, J. This action was brought to foreclose a mortgage. Before the judgment of foreclosure and sale was entered, the various parties, by stipulation, reserved for future consideration two questions: (1) The amount of the deficiency, if any, and (2) the liability of certain guarantors for the same. The property was sold to the plaintiff for $25,000, leaving a deficiency of over $12,000, and both questions must now be decided.

Upon the application of certain of the defendants, who are guarantors of the payment of any deficiency judgment which might be obtained, the court fixed, in advance of the sale, an upset price below which the sale would not be confirmed (151 Misc. 249). The amount so fixed was the sum of $25,000, that being the amount asked for by the defendants. As the court necessarily considered, at least to some extent, the value of the property in arriving at the upset price, it may be argued that, as the defendants have been heard once upon the question of the fair market value of the property, they ought to be bound by the position then taken by them and should not again be heard thereon. However, in view of the mandatory provisions of section 1083-a of the Civil Practice Act, I am of the opinion that, notwithstanding its prior action, the court is bound, under the statute, to proceed anew to

determine the fair market value. The statute prohibits the granting of a judgment for a deficiency, except in accordance with the procedure prescribed in the law and that procedure must, therefore, be followed if a deficiency judgment is to be obtained.

In determining the amount of the deficiency judgment the Civil Practice Act, section 1083-a, provides that: " The court, * * * shall determine, upon affidavit or otherwise as it shall direct, the fair and reasonable market value of the mortgaged premises as of the date of sale or such nearest earlier date as there shall have been any market value thereof and shall make an order directing the entry of a deficiency judgment." The Court of Appeals has upheld this statute both as to its constitutionality and its application to the guarantors of the mortgage indebtedness (*Klinke* v. *Samuels*, 264 N. Y. 144).

Although it has been held (*City Bank Farmers Trust Company* v. *Combined Real Estate Interests*, 149 Misc. 742) that the fair market value of property can be more satisfactorily determined by the examination and cross-examination of witnesses, yet the court clearly has the power to rely wholly upon affidavits in fixing said value, and all the attorneys for the interested parties wish the court to base its decision upon the affidavits as to value submitted by the various parties.

The property in question is in the northwesterly quarter of a block in the city of Jamestown, N. Y., bounded on the north by West Fourth street, on the east by Cherry street, on the south by West Third street and on the west by Washington street. This block is in the heart of the business section, and the Hotel Jamestown covers about two-thirds of the easterly half. There is a sixteen-foot alley between the easterly and westerly halves, and a ten-foot alley between the northwesterly and southwesterly quarters.

All the lots in the south half of the block are one hundred and twenty feet in depth. The lot in question is fifty-five feet front and rear. To the north is a lot with twenty-five feet frontage and one to the south with forty feet frontage.

The building, of steel and brick fireproof construction, covers the entire lot. The basement opens upon the sixteen-foot alley in the rear. The first floor is entered from the Washington street level, and is connected with the basement by a stairway and an hydraulic elevator large enough to raise and lower automobiles. Between the basement and first floor is a mezzanine floor containing a Turkish bath and a swimming pool. There are no partitions in either place.

The second and third floors are reached by a stairway and a passenger elevator. The second floor was used as a clubroom

and has an office, reading room, parlor, library, billiard room, kitchen, dining room and washroom. If necessary, all the partitions could be removed without affecting the building.

The third floor is really two stories high. It has an auditorium one hundred feet long and about forty-five feet wide and a mezzanine floor upon which there are twenty-six boxes for the use of spectators. There is also a large stage at the east end, a good sized kitchen, a ladies' dressing room and a men's washroom on the mezzanine floor.

The building was erected in 1912, and to obtain some of the money to pay the contractors a mortgage was given to the plaintiff for $45,000. The amount was based upon the cost of erecting the building, then estimated at $90,000, but which was about $99,000 when the building was completed.

From the completion of the building until the depression, some seventeen years or more, it was occupied by the Jamestown Aerie No. 816, of the Fraternal Order of Eagles, and during that period $15,000 was paid upon the principal of said mortgage, leaving a balance due of $30,000 when the default in the payment of interest and other carrying charges occurred.

While courts of equity have always had at least some power over the entry of deficiency judgments, under sections 1083-a and 1083-b of the Civil Practice Act, that power is now mandatory, and it has been said that " the intent of the new legislation is to bring both mortgagor and mortgagee within the spirit of equity; neither must be done an injustice " (*City Bank Farmers Trust Co.* v. *Combined Real Estate Interests, supra*). With this admonition in mind the affidavits of the respective parties as to values will be considered.

In support of its contention that it should be allowed a deficiency judgment, the plaintiff submits the affidavits of its president, Charles H. Wendell, and its attorney, William W. Storrs, and both give cogent reasons why the property is not worth over $25,000, the upset price heretofore fixed by the court. The plaintiff has also submitted affidavits of William T. Morris and Daniel W. Schwartz, both of Niagara Falls, N. Y., who, after a personal examination of the property and the conditions that affect its value, appraise the property at $15,000. All of the affidavits emphasize the fact that the building was constructed for a special purpose, but admit that the basement and first floor were designed for commercial use and have been generally so used. The plaintiff also urges that the income that can be secured from the property is an important, if not controlling, factor in deciding what, if any, deficiency judgment should be awarded to it.

In opposition to the claim for a deficiency judgment, the defendants have submitted the affidavits of six persons, living in James-

town, who are familiar with real estate values and the general conditions that affect the value of property in that city.

Ernest Cawcroft, the president of and attorney for the Eagle Building Company, says that he has been closely associated with the building project from its inception; that he was corporation counsel of the city for nine years, and in that capacity and in other ways he became familiar with real estate and rental values in said city; that the property, for some years past, has been assessed at $69,150; that the mortgage covers a lot of personal property of considerable value, especially when used in the building; that, in normal times, the basement and first floor have produced an annual rental of $2,700 to $4,200, and that the auditorium has been rented for public meetings.

Albert O. Swanson says that he has been in the building and construction business since 1908; that he has, for the past ten years, done all the estimating on work for proposed buildings for the Haas Construction Company, which erected the Eagles' Temple in 1912; that he was the timekeeper on the job and supervisor of the work; that to his personal knowledge the said building was properly constructed with materials of the best quality. He estimates the replacement cost at $126,067, the land at $13,000, the depreciation at $44,092, and the fair and reasonable market value at $48,000.

Victor C. Rogerson, a building contractor for over twenty years, and the owner of various properties in the heart of the Jamestown business district, says: " 3. That there are 27,000 square feet of usable floor area in this building.

" 4. Deponent further says that in fixing the current value of this building he has considered:

" (a) Replacement cost.

" (b) Amount of usable floor area.

" (c) Condition of building.

" (d) Location of site.

" (e) Adaptability for various uses.

" (f) Fairness of the assessed value.

" (g) The trend of the renting market.

" 5. Deponent, as a result of the careful checking of these various factors, and his intimate knowledge of the same, finds:

" (a) That the replacement cost of the building, in the Fall of 1933, would exceed the sum of $112,000.

" (b) The sound value of the building, allowing for its age and condition in general practice, would be considered at 74% of the replacement cost or not less than the sum of $82,880.

" (c) Assessed value of property, $69,150.

" (d) Comparable space in this city produces a rental income in excess of the amount necessary to develop a reasonable and safe return on the amount of the reasonable market value fixed herein.

" (e) That the present and reasonable market value of the property at this time, allowing for the depression, nature of the building, and all other factors recited herein, is the sum of $53,426 including the land at $11,986 and building $41,440; " and that the land is carried at about its cost in 1912, while the city has increased about fifty per cent in population, and many new buildings have been erected in the vicinity of property.

Harvey M. Osgood, who has been a member of the board of appeals in zoning matters and of the city planning commission, and is the executive head of the Allen Square Company, one of the largest owners of real property in the business district, and a licensed realtor, estimates fair market value at not less than $45,000.

Carl W. Nordh is a licensed realtor who has been in the business for over twenty years. He is a member of the board of review of the city of Jamestown, which reviews complaints made against valuations fixed by the director of assessments. He has made many appraisals for the State and Federal governments and private clients, and he estimates the fair market value of the property to be over $50,000.

Gilden R. Broadberry, a licensed realtor for the last fifteen years and now an appraiser for the United States Home Owners' Loan Corporation, reports as follows: " (a) That for these purposes, the value of the land is placed at not less than its original purchase price in 1911 and 1912, namely, $11,500.

" (b) That since the purchase of this land, many structures have been erected in the vicinity, the City has increased in population, and highways have been opened and paved, which converge upon this site.

| | |
|---|---|
| " (c) That the original cost of the building in 1912, was............................................. | $99,300 00 |
| " (d) From which deponent has deducted, for depreciation, obsolescence and all other economic factors, including usability...................... | 55,608 00 |
| " (e) Leaving a structural value of.............. | $43,692 00 |
| " (f) Plus conservative land value, as of the day of purchase................................... | 11,500 00 |
| " (g) Total market value as of today........... | $55,192 00 " |

After a careful examination of the affidavits submitted on behalf of the defendants, I think that all the things necessary for a fair valuation of the property have been considered by said appraisers, and I also feel that they know the local situation better than outsiders, and I have reached the conclusion that the fair market value of the property at the present time is not less than $45,000, or over $7,000 more than all of plaintiff's claims against it at the time of the sale. Under ordinary conditions, I believe that the income from the property will pay the interest and other carrying charges on this valuation.

The property, in my opinion, being worth more than the claims against it, the application for a deficiency judgment is denied.

The question of the liability of the guarantors has also been considered. The interest was payable on the first days of January and July of each year, and in almost every instance the payments were made from one to five days, and in one case twenty-two days prior to the due date. The acceptance of the payments in advance, without any reservations as against the guarantors, releases them from any liability for a deficiency judgment. (*East Side Savings Bank* v. *Scanlon*, 146 Misc. 695, and case cited on p. 696; *Reardon* v. *Olympic Theatre Corporation*, 236 App. Div. 712.)

Settle order on five days' notice.