CENTRAL NEW YORK MORTGAGE AND TITLE COMPANY, Plaintiff, *v.* PAUL B. WILLIAMS and Another, Defendants.

Supreme Court, Oneida County, February 28, 1935.

*Miller, Hubbell & Evans* [*Arthur L. Evans* of counsel], for the plaintiff.

*Clarence E. Williams*, for the defendants.

DOWLING, J. In the fall of 1923 defendant Elsie F. Williams purchased, for $11,000, the property described in the complaint, consisting of a three-story frame dwelling and a two-stall frame

garage, located on the northeast corner of Hobart and Kemble streets, Utica, N. Y., upon a lot forty feet wide by one hundred and thirteen or one hundred and sixteen feet deep. Mrs. Williams purchased the property for private dwelling purposes, expecting that relatives of herself and husband would occupy the property with them, which they never did.

The age of the dwelling house does not appear. The parties agree it is quite old, built in the days when sills were mortised and pop-gun window springs were in vogue.

The main floor consists of kitchen, dining room, living room, study, hallways and three outside porches. The second floor has four bedrooms and bath, the third floor has two bedrooms, store-room and bath. The roof is composed of built-up tar paper. The cellar extends under the whole building, has a concrete floor, an oil heating plant and a Rudd gas heater.

After defendants took possession of the property they made certain alterations and improvements, costing approximately $6,000, including construction of the above-mentioned garage.

On March 26, 1927, plaintiff loaned to the defendants $9,000, and, as security, defendants executed to the plaintiff their bond in that sum, secured by a mortgage in the amount of $9,000 covering said property. On April 15, 1930, defendants paid $2,000 of principal upon said mortgage.

Defendants met with certain financial reverses which prevented them from complying with the terms of said bond and mortgage and from maintaining the mortgaged property as a residence. Plaintiff threatened foreclosure. Defendants offered to convey the property and to pay $500 if plaintiff would release them from liability for deficiency in event of a foreclosure sale. Plaintiff refused the offer, and on the 13th of August, 1934, instituted this action to foreclose said mortgage. No action has been brought upon the bond. Defendants defaulted.

On September 8, 1934, judgment of foreclosure and sale was granted and the property was advertised and sold at public auction, in the public sales room, in the Oneida county court house, Utica, N. Y., at ten-thirty A. M., on the 3d day of October, 1934, to the plaintiff, the only bidder at the sale, for $4,000. The amount needed on the sale for principal, interest, costs, referee's fees, disbursements and taxes was $8,209.34. The referee made a report of the sale, showing a deficiency of $4,209.34. This report was filed in the Oneida county clerk's office October 15, 1934. To the report no objections have been filed.

On December 7, 1934, plaintiff served notice of motion on defendants, returnable December 17, 1934, " for an order confirming the

referee's report of sale heretofore filed herein, and directing the Clerk of this Court to enter a deficiency judgment in the sum of three thousand, nine hundred and thirty-four ($3,934) dollars against the defendants Paul B. Williams and Elsie F. Williams (also known as Elsie D. Williams), in accordance with the provisions of Sec. 1083a of the Civil Practice Act." The notice of motion is supported by the affidavits of Mr. John Seifert, treasurer of the plaintiff, Mr. Charles A. Miller and Mr. Charles W. Hill, real estate dealers of Utica. The defendants appeared and served answering affidavits, to which plaintiff served replying affidavits.

The affidavits raised issues of fact in regard to the market value of the property on date of sale, rendering it necessary for the court to take oral testimony with respect to " the fair and reasonable market value of the mortgaged premises as of the date such premises were bid in at auction or such nearest earlier date as there shall have been any market value thereof " as required by section 1083-a of the Civil Practice Act.

Upon the hearing, plaintiff called three expert witnesses, Mr. Edmund C. Richards, a contractor and builder, Mr. Charles A. Miller and Mr. Charles W. Hill, real estate dealers, all of Utica. These gentlemen testified that on October 3, 1934, the fair and reasonable market value of the mortgaged premises was:

| | |
|---|---|
| Mr. Richards | $5,500 |
| Mr. Miller | 5,350 |
| Mr. Hill | 5,000 |

Defendants called three expert witnesses, Mr. Pierce Jones, contractor and builder, Mr. John D. White and Mr. Edward V. Donohue, real estate dealers, all of Utica. These gentlemen testified that the fair and reasonable market value of said premises on October 3, 1934, was:

| | |
|---|---|
| Mr. Jones (replacement value) | $10,500 |
| Mr. White | 8,500 |
| Mr. Donohue | 9,000 |

Mr. White was of the opinion that the property could be converted into a three-family apartment at an outlay of possibly $1,500 to $2,000, and that, if so converted, would produce a gross monthly rental of $125, or $1,500 per annum. He estimated the carrying charges, taxes, $340; heating, $200; janitor, $120; repairs, $50; insurance, $25; incidentals, $50; leaving a net annual rental of $715.

Mr. Donohue concurred with Mr. White in respect to the possibility of converting said dwelling into an apartment house and as to

the rental income therefrom. He was also of the opinion that the property had a commercial value due to its location. (The present zoning law prohibits use of this property for commercial purposes.)

Mr. Charles A. Miller, for plaintiff, was of the opinion that, if the property were converted into an apartment house, the rent would not exceed ninety dollars a month. That its rental value as a one-family house is forty dollars per month.

The testimony presents the usual disagreement of experts on market value. Those for plaintiff are too pessimistic and those for defendants are too optimistic respecting this subject. All of them are experienced, reputable gentlemen. It is difficult to understand why such a difference of opinion exists among them, unless it be their zeal obscured their better judgment.

The statute requires the court to determine the fair and reasonable market value as of the date when the premises were bid in at auction or such nearest earlier date as there shall have been any market value.

In *People ex rel. Sebring* v. *Dowd* (206 App. Div. 727) the Fourth Department said " that [referring to market value] is ordinarily measured by the price which could be obtained after a reasonable and ample time for sale, such as would usually be taken by an owner. Just what elements go to make up the market value depend largely upon the facts and circumstances surrounding the particular case. There is no inflexible rule. It is a question of good judgment." In *People ex rel. Brown* v. *Purdy* (186 App. Div. 54, at p. 57) the First Department said: " The market value of real estate is what a purchaser, who is not compelled to buy, will pay under ordinary circumstances, to a seller who is not compelled to sell." In *People ex rel. Szerlip* v. *Goldfogle* (118 Misc. 8) Justice CALLAGHAN said: " The market value must be determined by the price for which a willing owner would sell and a willing purchaser would buy."

On the occasion of the sale, literally speaking, there was no market value in the sense there was a willing buyer at hand. Mr. Williams had attempted to sell the property without success before the foreclosure action was instituted. The only direct evidence of real market value was in 1923 when the defendants bought the property for $11,000.

From 1923 to 1928 realty values advanced decisively in Utica, reaching their peak in 1927–1928.

In *City Bank F. T. Co.* v. *Combined Real Estate Interests* (149 Misc. 742), in discussing the question of deficiency judgments, Mr. Justice COLLINS (at p. 743) said: " The emergency legislation here involved at once recognizes the earlier inflation as well as the subsequent 'abnormal deflation of real property values and the

curtailment of incomes by unemployment and other adverse conditions.' The intent of the new legislation is to bring both mortgagor and mortgagee within the spirit of equity; neither must be done an injustice. Whilst the enactment accords recognition to the principle that an abnormally changed real estate market must necessarily affect contractual rights and obligations, it was never contemplated that either mortgagor or mortgagee should have an unconscionable advantage over the other. Chapter 794 seeks to invest every mortgage foreclosure sale with a conscience." In *New York Life Ins. Co.* v. *Guttag Corp.* (265 N. Y. 292) Judge POUND said (at p. 295): " During the emergency he [referring to a mortgagee] may not have such deficiency judgment unless the property sells at substantially its fair and reasonable market value. No longer may the plaintiff in a foreclosure action bid in the property at a nominal sum when the depression in the real estate market has absorbed the owner's once substantial equity therein."

In arriving at market value, the court should take into consideration replacement costs, usable floor area, condition of building, location of site, adaptability for various uses, fairness of assessed value and trend of the renting market. (*Farmers & Mech. Sav. Bank, Lockport,* v. *Eagle Bldg. Co.,* 153 Misc. 554, 558.) In *People ex rel. Szerlip* v. *Goldfogle* (*supra*) Judge CALLAGHAN said: " There is of course a presumption that the assessment is correct, as it was fixed by a sworn public official."

In an ordinary market the sale on foreclosure usually fixes some criterion of the value of a parcel of realty due to the presence of bidders who are looking for a bargain. (*Dry Dock Savings Institution* v. *Harriman Realty Corp.,* 150 Misc. 860.) The instant sale, however, was not had in an ordinary market and is, therefore, no true criteron of the value of the property in question.

That the dwelling is old, that it needs substantial repairs inside and out, that it is located in a section favorable for renting purposes and is convenient to business section, church, library and school, cannot be gainsaid.

The property was in good repair at the time the mortgage was given. It was then worth, at least, $12,000. On the date of sale it was assessed at $8,500. There is no proof that objection was ever made by any one to the assessors that this assessment was too high. It is unlikely plaintiff would have loaned more than seventy-five per cent of the value of this property, even granting that defendants were a good moral risk at the time.

Property in Utica has depreciated in value thirty-five to forty per cent since 1928. This property has depreciated less than property in East Utica for the reason it lies in a good renting locality. A

depreciation of thirty-five per cent would be adequate for the section in which this property is located. This property has depreciated more than property in the same vicinity which has been kept in good repair. A depreciation of thirty-eight per cent fairly represents the decline in market value of this particular property. Thirty-eight per cent of $12,000 is $4,560, which deducted from $12,000 leaves $7,440, the current or market value of the property on the date of sale. The amount required upon the sale, $8,209.34, less $7,440, leaves $769.34, in which amount plaintiff is entitled to a deficiency judgment against the defendants, with interest from October 3, 1934.

Plaintiff argues that the market value at the time of sale was $5,500, the value given by Mr. Richards, thus discarding the values given by its two real estate dealers and to that extent weakening the force of their testimony as experts.

This disposition will work substantial justice between the parties. Plaintiff has the property divested of defendants' " once substantial equity." The venture was unprofitable to all concerned. True, plaintiff loaned its money. Defendants, no doubt, expected to repay every farthing and would have done so had not the depression intervened rendering payment impossible. Defendants expended $6,000 on the property and paid $2,000 on the mortgage. Plaintiff has $8,209.34 invested in the premises. Defendants have had the use of the property. Plaintiff has had its interest for many years. Defendants' investment has been wiped out while plaintiff has the property to protect its loan. It is situations like this the statute was designed to meet so that no party to a mortgage shall suffer injustice as a result of emergency. It is the function of equity to safeguard the rights of the strong and the weak that neither may suffer harm at the hands of the other. Equity must apportion the burden according to the carrying abilities of those having to bear it. We think the conclusions reached meet the requirement of the statute in this respect.

We are told the country is on the threshold of better times. When they shall have arrived, plaintiff, undoubtedly, will be able to dispose of the property without loss to itself. Meantime it should be rented so as to carry itself.

Enter order for judgment and for confirmation of referee's report of sale accordingly, without motion costs to either party.