CORN EXCHANGE BANK TRUST COMPANY, Plaintiff, *v.* LESLIE J. EKENBERG, as Trustee of ISLAND PARK-LONG BEACH, INC., and Others, Defendants.

County Court, Nassau County, October 13, 1936.

*Laughlin, Gerard, Bowers & Halpin* [*Howard E. Bremman* of counsel], for the plaintiff.

*April & Eisenrod* [*Nathan April* of counsel], for the defendant Leslie J. Ekenberg, as trustee.

*Pettit & Pettit* [*William S. Pettit* of counsel], for the defendants William L. Austin and Island Park-Long Beach, Inc.

JOHNSON, J. On a motion by the plaintiff in an action to foreclose a mortgage on real property, who had become the purchaser of the property at the sale, to confirm the sale and for a deficiency judgment against certain of the defendants, the sale was confirmed, and the matter referred to a referee to take testimony and report as to the fair and reasonable market value of the mortgaged premises pursuant to section 1083-a of the Civil Practice Act.

The referee has made and filed his report fixing such value at $700,000. As the amount due was $929,631.30, if follows that, upon the value as fixed by the referee, there would be a deficiency of $229,631.30.

The plaintiff moves to confirm the report and for a deficiency judgment accordingly. The defendants oppose the confirmation of the report and ask an order fixing the value of the premises at a sum in excess of the amount due, and consequently allowing no deficiency judgment.

In order to determine the amount, if any, of the deficiency, the referee was required to find " the fair and reasonable market value of the mortgaged premises as of the date such premises were bid in at auction or such nearest earlier date as there shall have been any market value thereof." (Civ. Prac. Act, § 1083-a.) He

was thus required to find, not the "market value," nor the "fair and reasonable value," but the "*fair and reasonable market value.*" He was to find such value as of the date of sale or at the nearest earlier date at which the premises had, not any "fair and reasonable market value," but "any market value" whatever. If at the time of the sale the premises had no "market value" and by that must necessarily be meant a "value" based upon a "market," that is, a condition where willing sellers meet willing buyers (*Berkshire Life Insurance Co.* v. *Van Voorhis*, 245 App. Div. 592), then it necessarily follows that if, at that time, there was no such market at all, inquiry must go back to the next earlier period when there was such a market.

The sale in this case took place in June, 1935. From the testimony of the witnesses both for the plaintiff and for the defendants, it seems clear that at the time of the sale there was no such market for the premises. They consisted of vacant lots in a development at Island Park in the town of Hempstead in Nassau county. The testimony of those witnesses shows quite clearly that, during the years 1932 to 1935, both inclusive, there was no such "market" for these premises, no condition prevailing of willing sellers and willing buyers resulting in sales or a "market" upon which the witnesses could base a "fair and reasonable *market* value." On the contrary, it appears that the nearest earlier date at which there was such a "market" was the year 1931. This is in accord with conditions of which the court may well take judicial notice. In the years 1928 and 1929 the real estate and mortgage market was active and prices were high. That market was not affected immediately by the "break" or "panic" in the securities market in the fall of 1929. Indeed its first effect was to turn investment into the real estate and mortgage market. It was not until late in 1931 or early in 1932 that real estate and mortgage values felt the effect of the depression (See *Matter of Flint*, 240 App. Div. 217, 226; *Matter of Young*, 159 Misc. 611); but from that time on the deterioration of the real estate and mortgage market was rapid and resulted in the moratorium legislation in the summer of 1933.

The witnesses have testified that in the year 1931, when there was a market for the premises and they had a market value, the fair and reasonable market value was approximately $3,000,000. The defendants contend, therefore, that, there having been no "market" and consequently no "market value" at the time of this sale, and the year 1931 being the nearest earlier date when there was any market value, the referee should have found, as required by the statute, the "fair and reasonable market value"

as of the year 1931, which the testimony of the witnesses fixed at approximately $3,000,000; from which it would necessarily follow that there would be no deficiency.

Such was the decision of Mr. Justice CUFF at Special Term in Nassau county in *Fulton Trust Co.* v. *Kraft* (155 Misc. 769). In that case plaintiff's witness testified to a value of $12,000 at the date of the sale, but was unable to base such valuation upon sales because there was none. Finding no " market " and consequently no " market value " at that time, the court went back to the nearest earlier date when there was a market and market values, found it to be the year 1930, and accepted the testimony as to the fair and reasonable market value of that year in the sum of $18,000.

Such, too, was the decision of the First Department Appellate Division in *Central Hanover Bank & Trust Co.* v. *Kraft* (248 App. Div. 216). There, the evidence before the referee disclosed no market for the property at the date of sale in December, 1934, and for at least three years prior thereto. The court, therefore, held that the referee was in error in finding that there was a market for the mortgaged premises at the time of the sale, and made its own finding that there was no market at that time or during the years 1932, 1933 and 1934, but that the nearest earlier date at which there was a market was the fall of 1931, at which time the fair and reasonable market value was $97,600, which exceeded the amount due.

In the present case the referee has found that the fair and reasonable market value of the premises at the date of the sale was $700,000. I am of the opinion, for the reasons stated, that he has erred in this respect. However, it is unnecessary to refer the matter back. Upon the evidence taken this court may make its own finding. (*President & Directors of Manhattan Co.* v. *Premier Building Corp.*, 247 App. Div. 297.)

Upon what basis, then, should the court make its finding?

As the Appellate Division in this department has said in the case last cited, there being no normal market in which proper values may be determined, the ordinary evidence of such values usually availed of in normal times has largely become value-less, and we must depend upon other proofs and standards. Prior sales in the vicinity " approximating fair values " may be considered. So may assessed valuation, location, adaptation to use, structural costs, etc.

Prices obtained at forced sales cannot furnish a fair standard of measurement, nor can the sales in boom times be of determinative value. Always to be borne in mind is " the reasonable expectation

that something like normal markets will again arise and that values of real property are more or less constant over a period of years. (*Central Realty Co.* v. *Board of Review*, 110 W. Va. 437.) It is a question of good judgment assisted by the expert opinions of those of experience who have witnessed fluctuations in value for a considerable period of time." (*President & Directors of Manhattan Co.* v. *Premier Building Corp., supra.*)

The question is a difficult one, but nevertheless must be determined. The Legislature did not intend to destroy the contractual obligation of the obligor, but did intend to relieve him from the unconscionable result of the lack of market whereby the obligee might own the property and still have judgment against the obligor for the debt. It intended to treat both equitably. It recognized the earlier inflation as well as the later deflation of realty values. (*Central New York Mortgage & Title Co.* v. *Williams*, 155 Misc. 376; *City Bank Farmers Trust Co.* v. *Combined Real Estate Interests*, 149 id. 742.)

It clearly follows that the Legislature could not have intended that, in fixing " fair and reasonable market value," the court should take prices either at the height of inflation or at the depth of deflation; but rather that a result should be attained that is equitable, fair and reasonable, both to the obligor and to the obligee. This may be done by attempting to reach a " normal " value based upon both inflation and deflation and over a period of time which may fairly reflect value in " something like normal markets."

I think that the value here fixed by the referee reflects a period of deflation, and may not be taken as a " fair and reasonable market value " upon the principles stated.

It may perhaps be equally true that the value of $3,000,000 fixed as of the year 1931 represents a period of inflation, based upon sales in " boom " times, and, therefore, not determinative of fair and reasonable market value. In arriving at that value, other elements may be considered. Depreciation, obsolescence, structural costs, and the like, are, to be sure, not involved, the property being vacant and unimproved. Location and adaptation to use, however, are unchanged. Expectation of the return, in the not distant future, of a fairly normal market, should be considered. Evidences of such return are even now present. The longer view should be taken, in order to arrive at a " normal " value that avoids the pitfalls of inflation on the one hand and of deflation on the other.

In so doing, assessed valuation may be considered. Here the assessed valuation in 1932 was approximately $1,000,000. In 1935 it was $700,000. If $3,000,000 was the fair and reasonable

value of this property in 1931, then the assessed valuation at that time was about one-third of the real value. If the same ratio were applied to the 1935 assessed valuation of $700,000, it would reflect a real value, in the opinion of the assessors, of $2,000,000. I think that neither $3,000,000 nor $700,000 expresses a fair and reasonable market value in normal times; the one reflects inflation, the other deflation. If we take assessed valuation as representing seventy per cent of full value, it reflects a value in 1931 of approximately $1,500,000, and in 1935 of approximately $1,000,000.

Upon the evidence adduced I find that the fair and reasonable market value of the premises at the nearest date to the sale at which date there was a market value to be $1,500,000. As such sum exceeds the amount due, it follows that the motion to confirm the referee's report and for a deficiency judgment must be denied.