NICHOLAS D. DOXEY, Respondent, *v.* COATES, BENNETT & REIDENBACH, INC., Appellant.

Third Department, December 28, 1917.

**Sale — action for breach of contract — failure to make prompt shipment — counterclaim by purchaser for loss from rescission of contract for resale — failure of vendor to make prompt delivery under one contract no excuse for purchaser's rejection of tender under another contract made at same time.**

In an action for breach of contract of sale it appeared that the plaintiff on April eleventh made a written contract to sell the defendant several tons of steel scrap; that the defendant resold the steel and the plaintiff had knowledge when he made the contract that the defendant had sold or expected to resell.   The contract read " shipment to be made prompt." It appeared that in the trade " prompt " shipment required shipment within thirty days.   Plaintiff made shipments on May third and fifth, but no other shipments being made the defendant, after urging by mail the necessity of prompt delivery, canceled the contract on May thirteenth, because of delay.   The parties also made a separate contract whereby the plaintiff sold to the defendant several tons of annealing pots, the contract providing for " shipping instructions when the material is ready to be loaded; " that on April twenty-eighth plaintiff requested shipping instructions which were not given and subsequently renewed its tender but defendant refused to accept.

*Held*, on all the evidence, that the plaintiff was guilty of an inexcusable breach of its contract to deliver the steel scrap, but that the defendant is liable for the purchase price of the carload of steel shipped on May fifth, for which it had not paid, and for damages for not accepting the annealing pots.

" Prompt " shipment means expedition and admits of less delay than would be permissible under a contract to make delivery within a reasonable time.

The plaintiff's breach of contract in respect to the steel scrap did not constitute a sufficient reason for the rejection of the annealing pots, as the contracts were separate.

Since the defendant resold the steel scrap with reference to the plaintiff's contract, and the vendee rescinded because of delayed shipments by plaintiff, the defendant was entitled to counterclaim for loss of profits on the resale.

APPEAL by the defendant, Coates, Bennett & Reidenbach, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of

Chemung on the 20th day of March, 1917, upon the decision of the court, a jury having been waived, with notice of an intention to bring up for review the decision of the court pursuant to which the judgment was entered and also the bill of exceptions filed in the office of the clerk of the county of Chemung on the 27th day of March, 1917.

*C. A. Crandall,* for the appellant.

*Herendeen & Mandeville* [*E. W. Personius* of counsel], for the respondent.

COCHRANE, J.:

On April 11, 1916, plaintiff made a written contract to sell the defendant from 200 to 300 tons of No. 1, heavy melting steel scrap at sixteen dollars per gross ton, f. o. b. Elmira, N. Y. The scrap was in the yard of D. & H. Rubin in the city of Elmira, from whom the plaintiff had purchased the same, and the 200 to 300 tons specified in the contract with defendant was an estimate of the quantity in the yard of Rubin. The defendant, doing business in Rochester, resold the steel scrap to a concern in Buffalo, and the plaintiff was aware when he made his contract with the defendant that the latter had sold or expected to resell the same on the strength of its contract with him. The contract between the plaintiff and the defendant contained the provision: " Shipment to be made prompt."

On May third, plaintiff shipped one carload containing 56,300 pounds, for which the defendant paid. On May fifth another carload containing 55,500 pounds was shipped, for which the defendant has not paid. Presumably these shipments were made directly from Elmira to the defendant's vendee in Buffalo. No other shipments were made. On May thirteenth the defendant canceled the contract because of delayed delivery.

The parties also made a separate contract whereby the plaintiff sold to the defendant not more than twenty tons of burnt annealing pots, at sixteen dollars per gross ton, f. o. b. Elmira, the contract providing, " shipping instructions when the material is ready to be loaded." There was no other provision as to the time when this material should be shipped.

On April twenty-eighth plaintiff wrote the defendant asking for shipping instructions for the annealing pots, to which letter the defendant replied on April twenty-ninth that the market where it had resold this material was under embargo, and requesting the plaintiff to hold it until the embargo was raised. Subsequently the plaintiff renewed its tender of these annealing pots but the defendant refused to accept the same.

The trial justice held that the plaintiff was not in default in the delivery of either the steel scrap or the annealing pots, and awarded the plaintiff a judgment for $396.43, being the unpaid purchase price of the carload of the steel scrap shipped on May fifth, and for $504 damages because of defendant's refusal to accept the balance of the steel scrap, and for $184.68 damages because of the defendant's refusal to accept the annealing pots, amounting in all, with interest, to $1,132.85.

We think the learned trial justice was in error in his conclusion that the defendant wrongfully refused to accept the steel scrap. The contract for this called for prompt shipment. This means expedition and admits of less delay than would be permissible under a contract of delivery within a reasonable time. (*Tobias* v. *Lissberger*, 105 N. Y. 404, 410, 412; *Binger Company* v. *Blumberg*, 76 Misc. Rep. 432.) The defendant alleges in its answer that in the scrap metal business, shipments under contract specifying prompt shipment must be made within thirty days and that it was the intention of the parties herein that the property should be so shipped. We shall, therefore, assume that the plaintiff had until May eleventh, thirty days after the contract was made, to ship the steel scrap, although it is very clear from the evidence that it might all have been shipped within a much shorter period.

On April twentieth plaintiff wrote the defendant for shipping instructions for the steel scrap. On April twenty-fourth defendant wrote the plaintiff that it had sent the shipping instructions to Elmira, and said in the letter as follows: " We must impress upon you the necessity of making prompt shipment of the heavy melting steel purchased, as conditions are very uncertain, and if our parties cancel our contract we shall, of necessity, be compelled to cancel yours. We merely

emphasize this matter in order that you should understand the importance of getting the material moved." On April twenty-seventh the plaintiff replied to the last letter saying: " Replying to yours of the 24th inst., shipment of steel will all go forward next week." The following week expired on May sixth. Instead of keeping his promise to ship all the steel on or before that date the plaintiff, as already stated, only shipped two carloads, one on May third and one on May fifth. On May sixth the defendant's vendee in Buffalo canceled its contract with the defendant because of slow delivery. On May eighth defendant wired the plaintiff: " Stop immediately steel shipments and advise numbers cars being loaded." On the same day the defendant followed this telegram with a letter confirming the same and stating that its vendee had canceled its contract with the defendant. On receipt of the telegram on May eighth plaintiff wrote the defendant as follows: " Your message stopping shipments of steel scrap received, no cars are being loaded just at present expected to resume loading Wednesday next. Kindly advise resumption as soon as possible." On May thirteenth the defendant wrote the plaintiff definitely rescinding the contract. It seems quite clear from the foregoing facts that the default was on the part of the plaintiff. It is true that three days before the expiration of the time within which he had a right to make delivery, the defendant directed him to stop shipments and if this direction in the slightest degree influenced the plaintiff's conduct or interfered with the shipments in such a way as to prevent complete delivery by May eleventh, then the defendant and not the plaintiff is responsible for such failure. But it conclusively appears that when the defendant sent its telegram on May eighth stopping shipment the situation was such by reason of the plaintiff's delay prior to that time that he could not complete the delivery on May eleventh, and did not intend to do so. On May eighth in answer to defendant's telegram stopping the shipment, plaintiff wrote it that no cars were then being loaded and that he expected to resume loading on the following Wednesday, which would be May tenth. He testified that there was a balance undelivered of about 200 tons and that he could easily load one carload a day. The carloads which he had

shipped each contained about 28 tons.   As he had about 200 tons undelivered and could load about 28 tons a day and " expected to resume loading Wednesday next " which would have been May tenth, it is entirely clear that he did not intend to complete his contract by May eleventh, and that he could not do so, and the same reasoning makes it equally clear that he could easily have performed his contract within much less time than thirty days.   In fact the plaintiff expressly testifies that the entire amount of steel scrap could have been loaded in " about ten to twelve days."   In no way does the defendant appear to have been responsible for any delay. On the contrary, as early as April twenty-fourth it impressed the plaintiff with the necessity of making prompt delivery, reminding him of the possibility that its vendee might cancel its contract.   The circumstances do not indicate any delinquency or default on the part of the defendant nor any waiver by it of the time within which it was the duty of the plaintiff to make complete delivery.   The plaintiff offers as an excuse for his unjustifiable delay the condition of Rubin's yard from which the steel scrap was to be removed, and the occurrence of certain holidays when the work could not proceed.   But these explanations of the delay are not persuasive.   On his own testimony the plaintiff is guilty of an inexcusable breach of contract.

The trial justice properly held the defendant liable for the purchase price of the carload of steel scrap which was shipped May fifth, and for which the defendant has not paid (Pers. Prop. Law [Consol. Laws, chap. 41; Laws of 1909, chap. 45], § 125, subd. 1, as added by Laws of 1911, chap. 571), and for damages for not accepting the annealing pots.   Those were duly tendered by the plaintiff and refused by the defendant, probably for the reason that it considered that the plaintiff's breach of contract in respect to the steel scrap constituted a sufficient reason for the rejection of the annealing pots.   But the contracts are separate and each must be considered without reference to the other.

The defendant alleges a counterclaim because of the plaintiff's failure to deliver the steel scrap.   It had resold the same with reference to the plaintiff's contract as the latter well knew and the vendee of defendant rescinded the contract

with the latter because of delayed shipments by plaintiff under his contract. The defendant proved that its loss of profits on this resale was $134, and it follows from what has been said that it is entitled to recover this amount against the plaintiff.

The judgment should, therefore, be modified by deducting therefrom the items of $504 and $134, with the appropriate interest.

Judgment modified by deducting therefrom $638, with interest, and as so modified unanimously affirmed, without costs.