In the Matter of the Estate of JOSEPH PEENE, JR., Deceased.

Surrogate's Court, Westchester County, March 21, 1935.

*Benjamin W. Moore* [*Milton L. Romm* of counsel], for the receiver.

*Walsh, Baird, Harding & McCann* [*Joseph J. Harding* of counsel], for the objectants.

SLATER, S. The First National Bank and Trust Company of Yonkers (in liquidation), as substituted trustee of a trust under the will of Joseph Peene, Jr., for Eleanor J. Peene, life beneficiary, is accounting in this proceeding. Eleanor J. Peene, decedent's widow, a lady of over eighty years of age, has filed objections to the items in said account with regard to several mortgage participation certificates aggregating $21,000. Objection is made upon the grounds: (1) That the trustee purchased the participating certificates from itself as trustee; and (2) that the trustee failed to comply with the necessary prerequisite contained in section 188, subdivision 7, of the Banking Law, requiring prompt notice to the life beneficiary.

The participation certificates were allotted to the trust in the year 1930 and the early part of 1931. The beneficiary has been receiving no income for a couple of years.

The first objection may be dismissed on the authority of *Matter of Flint* (240 App. Div. 217; affd., 266 N. Y. 607).

The life beneficiary testified that she never received notice from the trustee. One of the remaindermen, Grace Peene, is a daughter. She testified that she lived with her mother, and helped her transact business with respect to this trust; that she received verbal notice of the investments at the trustee's place of business " *not very long* " after the investments were made; that she informed her mother regarding the investments. She, on behalf of her mother, never made objections to the making of these investments until the bank closed in 1933; that she received and accepted from the trustee checks and letters with regard to the investments.

The trust officer of the trustee testified that he informed the daughter of the trustee's wish to invest trust funds in mortgage participations and verbally informed her, at a time when the beneficiary was present, regarding the making of the investments, which was " *shortly after* " the allocation of the participation certificates to the trust portfolio. No evidence was offered by the trustee showing that a record was kept of the notice to beneficiaries.

The law requires that " such corporation shall promptly notify each person of full age and sound mind entitled to the income therefrom of the fact that such investment has been made." (Banking Law, § 188, subd. 7.)

The question is, does giving notice to beneficiaries enter into the *legality of the investment?* And does a failure to give notice cause the investment to be illegal? Is the *notice* of the investment an essential element to the legality of the investment? What was the legislative intent?

In the dictionary the word " prompt " is said to mean " to act immediately, responding on the instant." (*Tobias* v. *Lissberger*, 105 N. Y. 404, 412; *Doxey* v. *Coates, Bennett & Reidenbach, Inc.*, 181 App. Div. 207, 209.) Is the word " promptly " as used in the Banking Act to be given the meaning of " immediately," " responding with alacrity," or given the meaning of " responding with reasonable expedition?" Must the act of notice be done " pronto " or within a reasonable time? Was the notice required by the statute given?

A review of court decisions at the time of the enactment of chapter 385 of the Laws of 1917, with regard to the massing of trusts in one mortgage, should throw light upon the legislative intent. A study of its historical development should be of value. The genesis of the amendment of 1917 appears in the decisions of the cases about to be referred to. The provisions of the statute must be read in the light of its history and purpose.

The first case reflecting the views of the higher court on this general subject is found in *Doud* v. *Holmes* (63 N. Y. 635 [1875]), where it was held that the investment was not an execution of the trust; that the trustee could not mingle the trust funds with his own and invest them in common and require the trust to accept an undivided interest in the investment.

However, five years later, the court responded to argument and possible business needs in *Chesterman* v. *Eyland* (81 N. Y. 398 [1880]) by giving approval to the practice of massing in one mortgage the moneys of different beneficiaries. It was the court's conclusion that, in making such form of investment, the chamberlain did not subject the moneys to any prior lien or incumbrance; that each trust stood on an equality; the court found no legal objection to the practice, and held that no rule of law forbids it and " we are not prepared to say it should be discontinued." Here the door was opened to this style of investment.

The next case dealing with the " participation " form of investment is *Barry* v. *Lambert* (98 N. Y. 300 [1885]). This case turned upon the point of whether there was a valid and enforcible declaration of trust made to the extent of plaintiff's money invested in the securities. The case of *Elkin* v. *Elkin* (29 Misc. 513 [1899]) decided that after foreclosure the chamberlain may have a reason-

able time to sell the realty before distribution among the several funds.

*Matter of Menzie* (54 Misc. 188 [1907]) was a case where there was a commingling of funds for investment purposes, and the court followed the ruling in *Barry* v. *Lambert* (*supra*) and *Atlantic Trust Co.* v. *Powell* (23 Misc. 289).

The next case in point of time, as well as the leading authority, is *Matter of Union Trust Company* (*Hoffman Estate*) (219 N. Y. 514). This cause came out of Kings county. Objections were made to the investments in shares or participations in whole mortgages. The accountant claimed that the practice of permitting participations or shares had been given approval by the courts and set out what this particular company did for the protection of the trust investment. It recited the practical advantages of investment in such form. The hearing upon the objections was heard before the Hon. HERBERT T. KETCHAM, the former very able surrogate of Kings county.

The findings of fact indicated the procedure of the accountant company to be: (1) The placing of the papers in a fireproof vault; (2) the making of a declaration of trust for each specific trust indicating the interest or share of the beneficiary and filing the same in the vault in a " Book of Declaration of Mortgages;" (3) notification — " That the life beneficiaries of each trust are always *notified by letter by said trustee* of investments and of changes in investments at the time they are made, being given full statements thereof."

The surrogate said in his findings of fact that " immediately upon the receipt of the bond and mortgage, the company makes a declaration that it holds for a specific trust, or that it holds the same in shares for several specific trusts," and in paragraph No. 25 of the findings said: " That the life beneficiaries of each trust are *always notified by-letter by said trustee of investments and changes in investments at the time* they are made, being given full statements thereof, which show any difference in the principal or income, and on whose accounts moneys are paid or collected." In paragraph No. 26 the court found " that from the notices of investments and changes of investments which are *always sent by said trustee to the life beneficiaries* of said trusts the ownership of any mortgage or share in mortgage held for such trusts can be established."

While there is nothing on the face of the mortgage to indicate trust ownership, the court found that, from all these evidences within the company, trustee ownership could be established. He said: " These are all *inside* the company. *Outside* of the company

are the following evidences of ownership of mortgages held in trust: The *notice to beneficiaries*, and later, income statements containing a description of the investments sent to the life beneficiary." In this case a sample with regard to notice was offered in evidence, viz.: The trust held an interest in a Max Teichler mortgage. The assignment of the share to the trust was dated *June 20, 1911.* The letter of advice to the life beneficiary was dated and sent *June 21, 1911.* It was promptly done.

On page 178 of the case on appeal the following questions and answers were taken in evidence from Mr. Morton, assistant trust officer: " Q. So that from their notification alone the ownership can be proved? A. Yes." [Question by the surrogate:] " Q. They are notified of the assignment of the participation mortgage to other trusts? A. Yes. Q. As to the principal? A. There is no precise regularity as to the principal statements to show the owners, but they are advised of all the changes of investments *when they are made. I am speaking of the life beneficiary."* (Italics mine.)

· The opinion of Surrogate KETCHAM is reported in 86 Miscellaneous Reports, 392 (1914). He found the sole question to be, " whether or not the system thus portrayed is legal." He laid bare the lack of safety of investments of trust funds in the system. He condemned such an investment in which the trustee's personal funds are coupled with the funds of the trust, lest the latter be at the peril of the trustee's selfish interests. He found no difference in having an estate in the hands of a man of small affairs, or a corporation of large interests. He used these words: " The infirmities of the argument in behalf of the system which this accountant has instituted are many. The only test is the homely one, which falls into the language of popular caution and wisdom, ' Suppose that something should happen to the trustee?' " Then he goes into the realm of, let us say, probabilities — which, at the end of twenty years from the time he wrote, have become facts with regard to many corporate trustees and such investments. He sets out the potential elements of insecurity unnecessarily imposed upon the beneficiaries. An investment of funds which offers to the equitable owner as his security a fairly promising lawsuit is not to be admired if there be a better method of investment known. He finds essential features of the scheme which " is in itself enough to attract condemnation." But, at the end, he asserts he must abide by the decisions of the higher courts. In doing so, he said: " Authority is ample for the general principles affirmed in this opinion. * * * What they need is a simple and loyal observance."

Surrogate KETCHAM gave to us a vision of the future, when he wrote: " The result would be the disapproval of the investments to which objection is made, but the convictions thus declared cannot be permitted to control the decision of this case. They are contrary to the effect of authorities in this state, which, even though they may be susceptible of criticism and distinction, or may be arrayed against the judicial utterances of other jurisdictions, must constrain a court in the first instance. When individual judgment finds itself overcome, but not persuaded, it might yield in silence were it not for an abiding faith that a great question is never settled until it is settled right, and that until that question shall receive the last adjustment, protest, rather than an idle decorum, may be a duty."

The learned surrogate did not have a " deficiency of prevision and prophecy as to subsequent events." (*Matter of Balfe*, 152 Misc. 739.)

Affirmance was had in the Appellate Division, without opinion (170 App. Div. 953). In the Court of Appeals it was also affirmed (219 N. Y. 514 [1916]). The opinion was written by Judge CHASE, and in it he refers to the findings of the surrogate on page 517, and says: " The decree in this case was made as appears from the opinion of the surrogate (much of which we commend), not because the Surrogate's Court approved the form in which the investments were taken, but *because of findings of fact made by the surrogate, and particularly the following:*" By " the following " the court referred to the " Book of Declarations of Mortgages;" that immediately after such declaration, records were made of the declaration, and such record gives a description of each mortgage, and shows the several trusts for which it is held; that " *the life beneficiaries of each trust are always notified by letter by said trustee of investments and of changes in investments at the time they are made;*" that " from the notices of investments and changes of investments which are always sent by said trustee to the life beneficiaries of said trusts the ownership of any mortgage or share in mortgage held for such trusts can be established."

The last paragraph in the order of affirmance limits the decision. It is as follows: " The order of the Appellate Division *affects only transactions which have been reported to the beneficiaries, and for that reason should be affirmed.*" Chief Judge BARTLETT concurred with everything said in the opinion of Judge CHASE, except his conclusion that the order should be affirmed. He said: " the parties objecting to the account are entitled to have those views carried into effect." He voted to " modify the order so as to require the respondent to alter the form of the investments of the

trust fund so as to conform to the practice approved in the opinion of CHASE, J."

In the *Union Trust Company* case the Court of Appeals gives its approval to a form of trust investment in which a mortgage securing a loan of funds from several trust estates was held by the common corporate trustee in its own name, with nothing to show outwardly that title was held other than in its own private right and interest. It was specifically found that, at the time the part interest in the mortgage was apportioned to any trust estate and a corresponding charge made therefor in addition to corporate entries made in the record books of the corporate trustee, written notice of the details of the transaction was given to the interested beneficiaries.

The decision was rendered December 28, 1916. In March of 1917 a bill was introduced in the Senate by Senator Marshall, the then chairman of the Committee on Banking, to amend subdivision 7 of section 188 of the Banking Law regarding investments. It became chapter 385 of the Laws of 1917, effective May 7, 1917. It re-enacted old subdivision 7 of the section, together with the new part. The old part of subdivision 7 as re-enacted provides that all investments of money received by any corporation acting as executor, administrator, guardian or other form of trustee shall be at its sole risk. The added or new part provided that investment in bond and mortgage by any such corporate trustee " may be made by apportioning to any estate or fund held * * * a part interest in a bond and mortgage held by or in the name of such corporation, individually or in any representative capacity;" provided for the repurchase at its face value by said corporate trustee; but " such bond and mortgage shall be a legal investment for trustees under the laws of this state and the records of such corporation shall at all times show every interest in the said bond and mortgage and any part interest in such bond and mortgage so apportioned shall at all times be and remain at least equal in lien to any other interest therein and *such corporation shall promptly notify each person of full age and sound mind entitled to the income therefrom of the fact that such investment has been made."*

It may be said that " the statutory rule has superseded the court-made rule " upon specific facts with regard to investments by corporate trustees.

The law of the case (*Matter of Union Trust Co., supra*) was written into chapter 385 of the Laws of 1917. The relationship between the *Matter of Union Trust Company* case and the enactment of chapter 385 of the Laws of 1917 is such that any decision

under the former, and any legal reasoning applicable to acts done thereunder are likewise similarly applicable under the statute.

The court in its opinion in the *Matter of Union Trust Company* case discussed and ruled that under the safeguards therein laid down the common-law rule prohibiting a fiduciary from carrying trust assets in his or its individual name could to that extent be relaxed. The statute which immediately followed permits trust companies under the *identical* safeguard to engage in a similar practice.

A legislative act in derogation of the common law is to be strictly construed. (*Seligman* v. *Friedlander*, 199 N. Y. 373, 376.)

Shortly after the decision in the *Matter of Union Trust Company* case and the enactment of chapter 385 of the Laws of 1917, Surrogate KETCHAM, in *Matter of Hudson* (N. Y. L. J. June 29, 1917), held: " In the case at bar the trustees received an assignment of 15/86th of the mortgage in controversy, but it does not appear that the beneficiaries concerned received notice of the transaction or of the other interests therein which were allotted to other trusts. Upon foreclosure of this mortgage the loss has occurred and the trustees must be charged with one-seventh of the loss for the account of the only beneficiary now objecting."

The accounting proceeding and decision of Surrogate KETCHAM, together with his findings of fact, were filed in the Kings County Surrogate's Court October 27, 1917, in liber 137, page 298.

I hold that, under a fair construction of the act, prompt notice to beneficiaries is one of the essential elements and requirements intended and imposed by the law.

I conclude that no notice, written or verbal, as intended by the law, was given promptly or expeditiously, nor within a reasonable time to Mrs. Eleanor J. Peene, the life beneficiary of the trust. A failure to give such notice or a failure in any of the requirements stated in chapter 385 of the Laws of 1917 is fatal and does not bring the investment within the provisions of the statute. The shares or participations do not become legal investments. All the statutory requirements were not satisfied.

Upon the reasons set forth in this opinion, the accounting trustee must be surcharged with the amount of $21,000, the face of the mortgage participations, with interest.

Submit decree in accordance with this opinion and decision.