In the Matter of the Estate of ELLEN MAJOR JONES, Deceased.

Surrogate's Court, Westchester County, April 16, 1935.

*Benjamin W. Moore*, for the receiver.

*Scrugham & Arbuckle* [*W. Chantler Arbuckle* of counsel], for Sherman Rockwell Clark, objectant, and another.

*George H. Beckwith*, special guardian.

SLATER, S. The First National Bank and Trust Company of Yonkers, in liquidation, was the successor to the First National Bank of Yonkers which was named in the decedent's will as trustee of a certain trust. The First National Bank of Yonkers qualified on or about June 8, 1929, and continued to act as such trustee until September 30, 1929, at which time it was succeeded by merger with the accountant trustee.

Objections to the account were filed by Sherman Rockwell Clark, the adult life beneficiary, as well as by the special guardian for the infant remainderman.

These objectants allege:

1. That on June 16, 1930, the trustee invested in a mortgage participation certificate in the sum of $8,000 issued by it in a mortgage which it held in its individual capacity upon the land of one of its affiliates, and that the said investment was unlawful, imprudent, and an improper investment for trust funds.

2. That the trustee did not " promptly notify " the adult life beneficiary that such investment had been made.

3. That the amount of the commissions on principal and income claimed by the trustee is in excess of the amount allowed by law.

The Central National Bank of Yonkers, as substituted trustee, filed objections to the account, stating that the values given in Schedule " C " of the account for the securities, shown to be on hand but which were delivered to the substituted trustee, did not actually represent the present market value of such securities which is the only value at which such securities should be charged to the substituted trustee.

The parties have stipulated to the facts.

The foundation mortgage was made by the Esemes Realty Corporation to the First National Bank of Yonkers, the predecessor of the accountant trustee, on July 25, 1928. The property covered by the mortgage is situate in the city of Yonkers. The principal of the mortgage was past due at the time the certificate was issued and the mortgage was not extended. The improvements on the property consist of a one-story brick building  occupied at one

time as a garage. On October 18, 1928, the property was conveyed to the Yonkers Securities Corporation. On January 24, 1930, a second mortgage on the property was assigned to the Yonkers Safe Deposit Company. The participation was made on June 16, 1930, at which date the property was owned by the Yonkers Securities Corporation. The first mortgage (of which the $8,000 participation forms a part) was held by the First National Bank and Trust Company, the trustee, and the second mortgage was held by the Yonkers Safe Deposit Company.

It appears from the stipulation that Leslie R. Palmer was president of all three corporations. Arthur Snodgrass was vice-president of all three corporations, and William J. Bright was cashier and trust officer of the trust company and secretary of the other two corporations. The same three men were directors of the Yonkers Securities Corporation and three of the five directors of the Yonkers Safe Deposit Company. These three men and the principal officers of the bank owned the controlling stock interest of the trust company. The trust company owned 995 shares of 1,000 issued shares of the Yonkers Safe Deposit Company and the five directors each held one share, in all five shares being held by the same three men and two other officers of the bank. The Yonkers Securities Corporation was in turn owned by the Yonkers Safe Deposit Company and the stockholders of the bank. These affiliates or subsidiary corporations never had officers or clerks separate from those of the bank and operated as part of the bank itself. The safe deposit company operated vaults in the main office of the trust company. It would appear that the securities corporation and the safe deposit company were more than affiliates of the bank. They were used as departments of the bank itself. The ownership and the control of the mortgaged property in question were in the hands of the same individuals through the medium of corporations all in the interest of the accountant trustee. Impartial judgment, action or discretion with respect to the trust estate was impossible. A situation of inconsistent fidelity on the part of the trustee is created as it may be influenced by the duality of control and loyalty.

This is a case where we may lift the corporate veil, disregard the corporate entity and squarely raise the question as to the extent of the liability of the trustee, sweep away the act of legerdemain and impose the concepts of justice and equity. We are confronted with the condition of a trustee dealing with itself, buying for the trust estate part of its own mortgage upon its own property. This contravenes public policy and the law of the

State. (*Matter of Peck,* 152 Misc. 315, and cases cited, an opinion by this court.)

After October, 1928, the property was not self-sustaining as disclosed by the stipulation. The allocation of participation certificates in such a mortgage was imprudently and negligently made. (*Durant* v. *Crowley,* 197 App. Div. 540; affd., 234 N. Y. 581.) It is required of a trustee with regard to a trust fund that it should exercise such diligence and prudence in the care and management of such funds as in general prudent men of discretion and intelligence employ in the handling of their own like affairs. This principle was stated in *King* v. *Talbot* (40 N. Y. 76, 85) many years ago and it still holds in New York State.

Upon these grounds, the participation certificate is held to be the property of the trustee and the trustee is surcharged in the sum of $8,000, with interest from the date of the participation agreement, less the income therefrom which has been paid to the life beneficiary.

With regard to the failure to give "prompt notice" of the making of the mortgage participation certificate to the adult life beneficiary as required by section 188, subdivision 7, of the Banking Law, the accountant trustee offered no evidence of giving the notice required. The life beneficiary testified that he never received notice. This court, in *Matter of Peene* (155 Misc. 155), on a similar lack of prompt notice, decided that prompt notice was one of the elements required by the law to create a legal mortgage participation certificate. This additional ground sustains the surcharge in the amount of $8,000.

A letter from the bank, dated May 16, 1930, to Messrs. Scrugham & Arbuckle, attorneys for the estate of Ellen Major Jones, deceased, in the final account of proceedings, and the reply thereto dated May 17, 1930, has no binding force upon the life beneficiary. There is in evidence a disclaimer on the part of the attorneys and the life tenant that Messrs. Scrugham & Arbuckle represented the life beneficiary in any way, shape or manner after the decree of this court on August 8, 1929, in the final account of proceedings.

It is contended that the accounting trustee is not entitled to commissions for receiving or paying out either principal or income of the trust fund. In cases involving bank trustees in liquidation, on the question of commissions on corpus, this court has decided not to allow full commissions. (*Matter of Borland,* Feb. 7, 1935, and other cases.) The purpose of commissions is to receive pay for duties fully discharged. (*Matter of Mason,* 98 N. Y. 527, 536.) The computation of full commissions is as follows:

### PRINCIPAL.

*For Receiving:*

Schedule " A " ..................... $30,000 00

$2,000 at 5% ................. 100 00
20,000 at 2½% ................. 500 00
8,000 at 1½% ................. 120 00

$720 00
½ of 720 00    $360 00

*For Paying:*

Schedule " B-4 " .................. $4 50

$4.50 at 5% .................. 22½
½ of 22½    11

$360 11

### INCOME

*For Receiving and Paying* ............... $7,840 73

$7,840.73 at 1½% ................. $117 61    $117 61

Full commissions are not allowed. In the exercise of the powers of discretion vested in me, I will make an allowance in the sum of $180.06 as and for the services of the trustee with regard to principal of the corpus.

The trustee annually deducted commissions on income amounting to $377 without rendering an annual statement of receipts and disbursements of income to the life beneficiary. The process of remitting checks, less commissions, is violative of section 285 of the Surrogate's Court Act. The trustee has overpaid itself in the sum of $259.39. The accounting trustee is surcharged in the amount of $259.39 in favor of the life beneficiary, Sherman Rockwell Clark.

The special guardian has claimed that the trustee should be surcharged in the sum of $496.82, representing accrued interest on the securities delivered to it which was part of the principal of the trust and which it paid out as income. This payment of corpus as income has depleted the trust fund by such an amount.

The life beneficiary has received this amount and it must be refunded by him to the substituted trustee. Proportionate deductions may be made out of income upon agreement between the substituted trustee and the life beneficiary.

The Central National Bank, as substituted trustee, upon the receipt of all the securities in the trust will advise the court so that the court may fix upon the value of the assets in their hands for future accountings.

Submit decree in accordance herewith.