In the Matter of the Estate of ELOISE K. DE WINTER, Deceased.

Surrogate's Court, Westchester County, December 20, 1934.

*Louis G. Friess,* for the petitioners.

*Joseph Petchesky,* for Mabel Smith and another.

*Ira Maier,* for Ethel Taylor.

SLATER, S. The decedent died December 1, 1930. The will was admitted to probate on January 12, 1931. The " eighth " paragraph of the will gave to the executors and trustees " the sum of Fifteen Thousand ($15,000.00) dollars in trust nevertheless to receive the income therefrom and to pay the same to Ethel Taylor, my niece, until she reaches the age of thirty years, and upon arriving at said age, to pay to said Ethel Taylor, said sum of Fifteen Thousand ($15,000.00) dollars." Ethel Taylor is a daughter of one of the executors.

Other trusts were created in other paragraphs of the will, namely, one for $10,000 and another for $30,000. The residuary estate was given to the decedent's brother and sisters. The executors proceeded to set up the several trusts on or about *March 14, 1931*, and placed in the Ethel Taylor trust a guaranteed mortgage certificate of the Lawyers Mortgage Company of New York city in the principal sum of $15,000. This certificate had been purchased by the decedent and was part of her estate at the time of her death. Since the creation of the trust the trustees have paid the collected income on the mortgage certificate to Ethel Taylor.

Ethel Taylor reached the age of thirty years on the 29th of October, 1934. The trustees are accounting for the $15,000 mortgage certificate. Ethel Taylor has filed objections, demanding the payment of $15,000 in *money*, alleging that the market value of the certificate is $4,500; that the mortgage certificate is not due until May 1, 1936; that the investment is improper and illegal in law, and seeks to surcharge the trustees for the difference between the present market value of the certificate and the sum of $15,000.

The special circumstances and facts of each of these mortgage participation cases, as well as mortgage certificate cases, must govern the determination of the liability or freedom from liability of the trustees. The guaranteed mortgage certificate which had been purchased by the decedent and placed in the trust by the trustees was a legal investment for trust funds, pursuant to section 111 of the Decedent Estate Law and section 21 of the Personal Property Law, as amended. (*Matter of Cady*, 211 App. Div. 373, 375; *Matter of Alexander*, 152 Misc. 354; *Matter of Balfe*, Id. 739.) This is another case where the securities in a trust fund depreciated in value because of economic conditions. The securities in the trust, if in any other form of legal investment in these days of economic distress, would have been reduced in value to an alarming degree. The beneficiary of the trust has received the income of five and one-half per cent up to and including a partial payment of the interest due July 1, 1934, which was paid September 1, 1934. If the $15,000 were not invested in such form of investment, the beneficiary would be the first to find fault with any other form of investment that produced a smaller rate of interest. We must look at the facts as they existed at the time of the setting up of the trust. (*Matter of Flint*, 240 App. Div. 217, 225.) "The situation is to be adjudged not in retrospect but in prospect." In March, 1931, such certificates were readily salable. The stagnant situation set in much later — in 1932.

The will gave the trustees the right to hold other than legal investments. They had the right to buy securities, stocks and

bonds, using only their judgment as to the safety, and, if they had bought non-legals and taken losses, the will would have protected them, except as against highly speculative stocks. (*Matter of Clark*, 257 N. Y. 132.) I hold that the placing of the guaranteed mortgage certificate in this trust in March, 1931, was not an improper or imprudent act.

Another question relates to the payment of the fund in question. It was probably the intention of the testator to pay it in money, if demanded. In the good old days cash was seldom demanded, because any legal investments could be traded into money by a beneficiary, but now with the hard times upon us all legal quibbles are used in an effort to compel payments in cash. (*Matter of Flint*, 148 Misc. 474; *Matter of Froelich*, 150 id. 371, 373.) In the latter case Surrogate WINGATE said: " Whether or not the present inability of the trustee to comply with this obligation renders her subject to surcharge depends, however, wholly upon the question of whether or not her conduct in respect to the investment of the trust fund is legally censurable, or, in other words, whether the third objection of the respondent, alleging that her acts in this regard were unwise and improvident, is well taken."

And here in the instant case the question is, did the executors and trustees act in good faith and with that degree of care and diligence which we would expect from one circumstanced as they were, charged with the execution of the trust? I hold that they did so act and that the inability of the trustees to pay cash or money does not subject them to a surcharge.

The non-payment of interest and the decrease in the value of the guaranteed mortgage certificates have resulted solely from the condition in the business world, incident to the present financial depression, making it impossible for the trustees to comply with the direction of the will to pay in cash. The usual precedents applicable to such a situation cannot be imposed in the light of the facts of the instant case.

All objections to the accounting are overruled.

Proceed accordingly.