In the Matter of the Estate of CHARLES HENRY YOUNG, Deceased.

Surrogate's Court, Westchester County, May 15, 1936.

*Seacord, Ritchie & Young* [*Albert Ritchie* and *Frederick H. Seacord, Jr.*, of counsel], for the trustee.

*McLaughlin, Russell & Bullock* [*Frederick C. McLaughlin* and *Ralph A. Bullock* of counsel], for the objectants.

SLATER, S. In this judicial settlement of an intermediate account of proceedings, objections have been filed with regard to an investment of trust funds.

Many beneficiaries of trusts have been caught in the maelstrom of financial distress of the last few years. On such occasions they turn to the courts as agencies to decide the legality of investments. *King* v. *Talbot* (40 N. Y. 76) has for years provided the test for the care which trustees must exercise in handling other people's money. It is the vigilance and diligence of a prudent man. In later years the courts have approved, and the legislative body has provided by statutory provision, a new type or form of securities for legal investment of trust funds in shares, or parts of, or participations in, mortgages as well as certificates against whole mortgages. (*Barry* v. *Lambert*, 98 N. Y. 300; *Matter of Union Trust Co.* [*Hoffman Estate*], 219 id. 514; Dec. Est. Law, § 111; Pers. Prop. Law, § 21; Banking Law, § 188, subd. 7.) No method of supervision or control for this type of investment by trustees was provided; nor was any agency created to check upon the judgment of humankind as to the values of real property; nor to control the largeness of the whole mortgage to be made upon real property, or the amount of the participation as against the whole mortgage; nor were appraisals required to be made at the time of the making of the mortgage or the issuance of participations or certificates from time to time. The dangers in this type of investment are well stated by former Surrogate HERBERT T. KETCHAM in *Matter of Union Trust Co.* (*Hoffman Estate*) (86 Misc. 392; 219 N. Y. 514).

Because of the lack of supervision, we evidence today the withering of many trust funds so invested, as well as the amendment of the law permitting such forms of investment. (Laws of 1936, chaps. 264, 265, 898.) The Legislature has very properly created a new public policy with regard to the investment of trust funds. In times now passed, prosperity was enjoyed and values of real and personal property increased. Everybody and everything was financially riding high. As long as the wheels of business kept turning, trustees and beneficiaries were interested in the growing wealth and the

large percentage of interest received upon investments. All was well. Every one felt safe. Real and personal property were purchased and sold at high prices. Real estate agents, as well as the stock exchanges which dealt in securities, were overwhelmed with business. Then, in October, 1929, financial disaster of cyclonic strength strode the land, affecting, in the first instance, the values of personal securities. This financial disorder did not disturb realty values until the spring of 1932. (*Matter of Flint,* 240 App. Div. 217, at p. 226.)

With regard to realty values, the courts, in deciding cases of the instant kind, must forget the knowledge of the stagnation of realty sales which began in the spring of 1932 and has since continued, as well as the fact that there is still a lack of money to loan and, consequently, a lack of customers to buy real estate. Courts must view the acts of executors and trustees performed prior to the spring of 1932 with respect to mortgage investments upon the facts existing at the time of their occurrence. The particular situation in September, 1931, which is called to the court's attention by the objectants, must be judged, not in retrospect, but as if in prospect. (*Costello* v. *Costello,* 209 N. Y. 252, 262; *Matter of Flint,* 240 App. Div. 217, 225; *Matter of Winburn,* 140 Misc. 18, 23.)

The accountant was appointed substituted trustee on September 23, 1930. The resigning trustees, who were the mother of the objectants and another person, suggested that the principal of the trust be invested in mortgages. The trust fund was invested in a mortgage for $17,000 and a participation to the extent of $8,500 for each trust was made. The property affected by the mortgage was sold and the mortgage debt was paid in July, 1931. The principal of the trust fund was reinvested on September 8, 1931, in the Muir mortgage of $17,000, a participation being made for each of the trusts in the sum of $8,500. The accountant gave notice to the parties in interest of such participation. The Muir mortgage had been made by the owner to the accounting trust company in February, 1931. It was a loan of the company's money. On the closing of the Muir mortgage transaction, the $17,000 was disbursed by checks. Certain notes to the trust company for $4,261.77 which had been discounted for Mrs. Muir's husband without her indorsement were paid by her. At that time such notes were under-collateralized to the extent of $1,205. Mrs. Muir continued to pay the interest on the mortgage for a couple of years and then, to prevent foreclosure, tendered to the accountant-trustee the title to the property. The deed was taken in the names of the two beneficiaries and the accountant assigned to itself as trustee the mortgage which, in the first instance, had

been made to it. In the fall of 1934 the objectant-beneficiaries expressed dissatisfaction with the Muir mortgage. One of these beneficiaries had reached the age of twenty-five years on July 24, 1933, when she was entitled to her half of the trust corpus. The other beneficiary is still under the age of twenty-five years. In August, 1935, the objectants, through their attorneys, demanded from the trust company that it take the property back and place the beneficiaries in their original position. This was refused and, consequently, objections were made to the account of proceedings.

The beneficiaries set forth several objections which, when boiled down, are as follows: (1) That the $17,000 mortgage is not a legal investment because the real property was not worth fifty per centum more than the amount of the bond and mortgage; (2) that the trustee in making such investment was guilty of gross negligence and breach of trust; (3) that the trust company received out of the proceeds of the loan of $17,000 the sum of $4,261.77 in payment of notes of the mortgagor's husband and, consequently, the mortgage transaction was tainted with fraud; (4) that the trust company could not participate in its own mortgage.

Each objectant seeks a surcharge in the sum of $8,500, together with taxes paid by the objectant, with interest.

As to the first contention: To support a loan of $17,000 the value or worth of the property must be $25,000. Mrs. Muir made application to the trust company on November 10, 1930, for a loan of $20,000 on premises at 18 Lester place in New Rochelle. The plot of land is 100 feet in front by 200 feet in depth, on which was erected in 1905 a three-story frame house containing ten rooms and three baths. A two-car garage was on the property. The house in question was of the Queen Anne style of architecture. The application for a loan was referred to the trust company's appraiser, Mr. Harry E. Colwell. He placed a valuation of $33,500 on the property. The loan was approved by the loan committee of the trust company for $17,000. They fixed the land value at $12,500, the house at $20,000, and the garage at $1,000. On this appraisement a fifty per cent loan was made. The committee consisted of Mr. Colwell, Mr. van Zelm, president of the trust company, and Mr. Frederick H. Seacord, a director and attorney for the trust company. The property was located in a highly developed residential section of New Rochelle known as " Beechmont." The section contains valuable homes.

The court received the evidence of real estate experts, two for each side. One of the objectants' witnesses testified that the value of the property in September, 1931 was $20,000; another that the value of the land was $10,000 and the house $9,000; that the house could be rebuilt for $14,500. So, on a rebuilding formula,

the value placed by the witness is $24,500. One of the elements taken into consideration was the assessment of about $19,000. The accountant's appraisers testified to a sum above the required value of $25,000 to sustain the mortgage. One expert testified that the land value was $12,500. All conclude that the plot is valuable. By taking the highest lot value and the figure of the objectants' witness on the reconstruction of the home at $14,500, we get $24,500. Another witness testified that the house cost $20,000 to erect and, if reconstructed now, it would cost a like amount. There always appears to be a widespread difference in opinion evidence of realty experts. Such exists here. Much seemed to turn on the fact that the house, being of the Queen Anne style of architecture, was obsolete and difficult to sell in the latter day market. The Muirs had built the house in 1905 and occupied it as a home in their later years. The original appraisal was made for the trust company by a man of vast experience in appraisal work, who has been in the real estate business in New Rochelle for many years. He has been in public life and is a person held in high regard by all. There is no question but that the appraisal was made and the approval given by the loaning committee in good faith and in the exercise of its best judgment. The law does not hold responsible for errors of judgment a trustee who acts in good faith and who employs vigilance and prudence.

Seven months later, in September, 1931, the mortgage was participated into these trusts without a new appraisal. Before and in September, 1931, business was going through the stock market debacle, but the values of real estate had not commenced to recede. (*Matter of Balfe*, 152 Misc. 739, 748; *Matter of Flint*, 240 App. Div. 217, 226; *Matter of DeWinter*, 154 Misc. 50.) In the *Flint* case the court said: " The stock market crash in fact caused a movement of funds into first mortgages. The repercussions, however, of the crash caused conditions to ensue which finally did affect mortgage securities. They revealed their effect in the latter half of 1931 — becoming more acute in 1932."

In the time between September, 1931, when this mortgage passed into the trusts, and the present time, the continuance of the business depression brought in its train defaults in payment of taxes on property and interest on mortgages. This situation, which we have in our minds, must be laid aside in a decision of the case because these facts were not present in September, 1931. (*Matter of Balfe*, 152 Misc. 739, 748, and cases cited.) There was no reason for a reappraisal in September, 1931, because there had been no change in the property or in business conditions affecting the mortgage market. The test as to the worth of the property is to be applied as of September, 1931. The factor causing the

decline in market value or worth of the premises was the economic depression affecting land values which set in months after the mortgage had been participated into the trusts. At the time when notice was given of the participation of the mortgage in the trusts there existed nothing of a fraudulent nature to give notice of, or to conceal. The subsequent loss resulted not from anything hidden from beneficiaries, but from what approached every other person and his property which, in this case, occurred after the investment had been made. Upon the evidence presented, I hold, as a fact and as a matter of law, that the mortgage was a legal investment in September, 1931.

As to objection 2 herein stated, I hold that, in taking the mortgage and assigning it into the trust, the trustee was not guilty of negligence or fraud, nor was it made subject to liability for failure to exercise reasonable judgment and discretion. There is no law in this State requiring diversification of investments. (See *Matter of Adriance*, 145 Misc. 345, 352.) The corpus of the entire fund is about $39,000, each remainderman owning half, or about $19,500, of which $8,500, or less than half, was participated in the $17,000 mortgage upon a home occupied by the owner. In my opinion, the elements present in *Durant* v. *Crowley* (197 App. Div. 540; affd., 234 N. Y. 581) are not here existent.

As to objection 3 stated herein that the mortgage was tainted as a trust investment because the trust company made it for the purpose of collecting its own debt, no case has been presented by either side which reflects upon this question. The objectants claim that the trustee did not pay full value for the mortgage and raise the question of a breach of duty and fraud. There is no principle of law which holds that money which belongs to a mortgagor may not be paid by the mortgagor or pursuant to his or her direction to whomsoever the mortgagor pleases to have it go. In the present instance, upon the closing, the $17,000 was disbursed by several checks — $85 for mortgage tax account; $15 for another purpose; $6.75 for another purpose; $347.75 for legal services in the examination of the title; $525.33 for taxes; $1.25 for another purpose. A check was drawn to the order of Mary L. Muir, mortgagor, for $4,261.77 which was indorsed by her to the New Rochelle Trust Company in payment of her husband's notes. The balance of $11,758.15 passed by check to the mortgagor. So far as I can observe, it was a loan transaction made in the open, honestly made, and carried by the trust company on its own books as an asset in the sum of $17,000. Seven months later, in September, 1931, it was participated into the trust. There is nothing in the transaction inconsistent with fair dealing and good conscience. The loan was not suspicious or tainted. There

was no breach of duty, trust or confidence whereby equitable relief may be given.

As to objection 4 stated herein, I hold that the trust company could legally make the participations. This has definitely been decided in *Matter of Flint* (240 App. Div. 217, 225; affd., 266 N. Y. 607); *Matter of Peene* (155 Misc. 155). The principle of law laid down in *Matter of Peck* (152 Misc. 315) does not apply.

The objections are dismissed.

Submit decree in accordance herewith.