In the Matter of the Judicial Settlement of the Account of Proceedings of GUARANTY TRUST COMPANY OF NEW YORK, Surviving Trustee, and CARRIE DALSIMER, as Sole Executrix, etc., of NATHAN S. DALSIMER, Deceased, Cotrustee of the Trust Created by Paragraph " (c) " of Clause Numbered " Third " of the Last Will and Testament of ZETTIE DALSIMER, Deceased.*

GUARANTY TRUST COMPANY OF NEW YORK, Appellant; CARRIE THALHEIMER and CARRIE DALSIMER, as Executrix, etc., of NATHAN S. DALSIMER, Deceased Cotrustee, Respondents.

In the Matter of the Judicial Settlement of the Account of GUARANTY TRUST COMPANY OF NEW YORK, Surviving Trustee, and CARRIE DALSIMER, as Sole Executrix, etc., of NATHAN S. DALSIMER, Deceased Cotrustee, of the Trust Created by Paragraph " (e) " of Clause Numbered " Third " of the Last Will and Testament of ZETTIE DALSIMER, Deceased, to the Date of Death of NATHAN S. DALSIMER, and of the Account of GUARANTY TRUST COMPANY OF NEW YORK as Sole Surviving Trustee from Said Date.

GUARANTY TRUST COMPANY OF NEW YORK, Appellant; CARRIE DALSIMER, Individually and as Executrix, etc., of NATHAN S. DALSIMER, Deceased Cotrustee, Respondent.

In the Matter of the Judicial Settlement of the Account of Proceedings of GUARANTY TRUST COMPANY OF NEW YORK, Surviving Trustee, and CARRIE DALSIMER, as Sole Executrix, etc., of NATHAN S. DALSIMER, Deceased Cotrustee of the Trust Created by Paragraph " (g) " of Clause Numbered " Third " of the Last Will and Testament of ZETTIE DALSIMER, Deceased.

GUARANTY TRUST COMPANY OF NEW YORK, Appellant; ELMER F. QUINN, Special Guardian, AUGUSTA DALSIMER and CARRIE DALSIMER, as Executrix, etc., of NATHAN S. DALSIMER, Deceased Cotrustee, Respondents.

First Department, May 28, 1937.

*Affg. 160 Misc. 906.

*Theodore Kiendl* of counsel [*Otis T. Bradley* and *Edwin E. Peterson* with him on the brief; *Davis, Polk, Wardwell, Gardiner & Reed*, attorneys], for the appellant.

*Harold Riegelman* of counsel [*H. H. Nordlinger* and *David B. Lefkowitz* with him on the brief; *Nordlinger, Riegelman & Cooper*, attorneys, for the respondent Carrie Dalsimer]; [*Julius Cutler* with him on the brief; *Cutler & Cutler*, attorneys, for the respondents

Augusta Dalsimer and Carrie Thalheimer], and [*Jessie Silberfein* with him on the brief; *Elmer F. Quinn*, special guardian], for the respondents.

*Edwin W. Cooney* of counsel [*Eben E. Rand* with him on the brief; *Mitchell, Taylor, Capron & Marsh*, attorneys], for the City Bank Farmers Trust Company, *amicus curiæ*.

DORE, J. The Guaranty Trust Company of New York, on October 21, 1930, purchased from the New York Title and Mortgage Company a consolidated first mortgage of $775,000 on the premises 57 West Fifty-eighth street, New York, N. Y., an apartment house known as The Coronet, on the northeast corner of Fifty-eighth street and Sixth avenue, in the borough of Manhattan. That purchase, specifically for the investment of trust funds, was made by appellant in its individual name, as authorized by subdivision 7 of section 188 of the Banking Law. The bond and mortgage was guaranteed by the New York Title and Mortgage Company as to principal and also as to interest to yield five per cent net. Prior to July 9, 1931, about $650,000 of the said mortgage had been allocated to various trusts, of which the Guaranty Trust Company of New York was trustee.

The said trust company was cotrustee with one Nathan Dalsimer of trusts in the estate of Zettie Dalsimer, deceased. On July 8, 1931, a mortgage on other premises in which three trusts of the Dalsimer estate held participations aggregating $73,000 was paid off. On July 9, 1931, appellant, as corporate trustee of said estate, reinvested said trust funds in the bond and mortgage on The Coronet, allocating $73,000 of said mortgage to the three Dalsimer trusts.

In these accounting proceedings objections were made to the three accounts on various grounds including the following which are the grounds of objection litigated on appeal: (1) That in October, 1930, at the time of the original purchase, the said bond and mortgage was not suitable for the investment of trust funds; and (2) that in July, 1931, at the time of the allocation to the trusts in question, it was not proper to invest trust funds in said bond and mortgage. In his opinion the surrogate substantially sets forth the salient facts and circumstances which need not be here repeated in detail. He sustained the objections on both the above-mentioned grounds and held: (a) That the mortgage in question was on the date of the original investment, October 21, 1930, not suitable for investment of trust funds; (b) that such investment at that time was imprudently, negligently and improvidently made; and (c) that in making the allocations to the three

trusts on July 9, 1931, without renewed inquiry or investigation, the trustee was negligent and should be surcharged.

An examination of the record and briefs leads us to the conclusion that the decrees should, in all respects, be affirmed, but we prefer to place our affirmance on the ground that, under all the facts and circumstances disclosed, the trustee on July 9, 1931, was under a duty to make inquiry before allocating $73,000 of these trusts to The Coronet mortgage; that such inquiry would have shown the mortgage was then unsuitable as an investment for trust funds, and, accordingly, the trustee should be surcharged.

Subdivision 7 of section 188 of the Banking Law relates to investments by corporate trustees, and at the time these investments were made permitted a corporate trustee to deal with itself within certain prescribed limitations. But that section leaves untouched the established general rules of law regarding the care and fidelity required of one acting in a fiduciary capacity and the obligation that a trustee must act with prudence, foresight and vigilance and without negligence in making trust fund investments. (*Matter of Flint*, 240 App. Div. 217.)

Whether the transactions and acts of a trustee in the investment and management of trust funds are imprudent, improper or negligent must be determined in the light of all the circumstances in each particular case, which should be considered as they existed at the time of the investment in prospect and not in retrospect (*King* v. *Talbot*, 40 N. Y. 76, 83; *Matter of Flint*, 240 App. Div. 217; *Matter of Young*, [2d Dept., Jan. 1937] 249 id. 495); and such facts and circumstances should also be considered under the rule that what one knows and what one in the exercise of ordinary care and prudence ought to know are regarded as equivalent in the law.

We consider, however, that the liability of the trustee must be determined as of July 9, 1931, when the trust funds actually were invested in participating interests in the mortgage. We hold that a prudent person at that time reasonably conversant with the facts disclosed in this record in respect to real estate conditions and trends in neighboring properties, and the special facts and circumstances with regard to the particular premises concerned, would have made an inquiry and examination into the advisability of making the investment at that time, and that if such inquiry were made the facts disclosed would not have afforded reasonable grounds or proper basis of assurance that the investment as of July 9, 1931, was fit and proper for trust funds. Assuming that the inquiry and the facts disclosed at the time of the original investment in October, 1930, justified the investment of trust funds in the premises in question, the trustee was not warranted in assuming that conditions had remained unchanged.

The trustee must be held to a knowledge of relevant facts readily discoverable at the time of the investment. While it is true that in the first half of 1931 there may have been no general collapse of realty values in the city of New York, nevertheless difficulties seriously affecting improved real estate in the immediate neighborhood of the premises in question were apparent and ascertainable by anyone who was reasonably conversant with such realty values and then current trends. Between 1930 and July, 1931, financial and real estate troubles in nine separate buildings all in the immediate neighborhood of The Coronet evidenced a downward trend of sale and rental values there. Between the beginning of 1930 and July, 1931, five suits to foreclose mortgages on surrounding properties improved with modern structures had been commenced. Construction of one large improvement near by, intended for residential use, had been halted before completion. A suit for the foreclosure of a mechanic's lien had been instituted on contiguous property modernly improved for residential purposes. On two additional neighboring buildings owners had executed assignments of rent. The difficulties which these surrounding and well improved premises were experiencing should have put a prudent person on notice of the need for inquiry in July, 1931, before investing $73,000 of trust funds in The Coronet, concededly a very old building and by no means an adequate and suitable improvement of the realty on which it stood; and such conditions indicated the end of any reasonable hope that persons of financial sufficiency could be found with the funds and the desire to improve and redevelop The Coronet site.

The plot almost immediately to the east of the premises had been cleared for construction by October, 1930, and this was noted in the report on which the trustee acted, but no construction had been begun by July, 1931. The physical condition of the premises in question, its suitability for securing rental value adequate at that time to carry the mortgage, the then actual and prospective rentals, the contrast between the premises and surrounding buildings in the immediate vicinity, all should have been known to the trustee at the time of the investment in July, 1931.

But this is not all. In July, 1931, there were on the property in question arrears of water rent due and unpaid as of record in the sum of $1,160.10, and an alarmingly large number of municipal violations of record against the premises, classified under thirty-two separate headings. The witness for the corporate trustee stated that if the mortgage had then been offered and he had known of such violations, the trustee would not have accepted the mortgage without provision for the correction of the violations.

No operating statement, at least as recent as July 1, 1931, was procured or sought, or any facts affirmatively to show that the building was at that time self-sustaining.

All of the above-mentioned circumstances and others in the record taken collectively indicated that the premises in question were not, on July 9, 1931, a fit and suitable investment for trust funds and the trustee was not justified in allocating $73,000 of participations in this mortgage to these trusts without any new inquiry or investigation which would have disclosed these facts. Yet there was at the time of such allocation no new inquiry or investigation of any kind regarding the property or the mortgage in question, the trustee relying on its original inquiry made in October, 1930, on the fact that its inspectors who were supposed from time to time to make inspections in the neighborhood had not made any adverse report and on the fact that there were no defaults in any of the large number of mortgages held in the portfolio of the corporate trustee.

The surrogate properly construed the will to require that investments be made in bonds and mortgages or parts of bonds and mortgages that were legal investments, and he also found the required statutory value present both in 1930 and in July, 1931. But a fiduciary who invests in securities within the classes specified by statute is not free from liability for resultant loss if he fails to exercise reasonable judgment and discretion in making the investment. (*Delafield* v. *Barret*, 270 N. Y. 43, 48; *Matter of Jacobs*, 152 Misc. 139; *Matter of Randolph*, 134 N. Y. Supp. 1117; affd., 150 App. Div. 902; appeal dismissed, 207 N. Y. 685.)

A trustee by acceptance of the office assumes the duty of satisfying himself with reasonable care of the soundness of an investment at the time it is made and cannot merely or principally rely on the guarantee of a title company but must rely primarily on the real security which the law requires of an investment of this character and then the guarantee may afford added security.

We conclude that the investment on July 9, 1931, under the facts disclosed in this record cannot be deemed a mere error of judgment, but negligence for which the trustee was properly surcharged.

The decrees, so far as appealed from, should be affirmed, with one bill of costs, payable, however, by the trustee and not out of the estate.

MARTIN, P. J., O'MALLEY, GLENNON and UNTERMYER, JJ., concur.

Decrees, so far as appealed from, unanimously affirmed, with one bill of costs, payable, however, by the trustee and not out of the estate.