In the Matter of the Estate of JAMES P. WALSH, Deceased.

Surrogate's Court, New York County, April 13, 1939.

*Pallister & Pallister* [*Claude V. Pallister* of counsel], for George Ringswald, as administrator, etc., of Clara Ringswald, deceased, executrix, trustee, petitioner.

*Hamilton & Freeman* [*Mahlon A. Freeman* of counsel], for the American Surety Company of New York.

*John W. M. Rutenberg,* for Evelyn Brown, successor trustee, and others, objectants.

*Frederick J. Sullivan,* special guardian [*William Roth* of counsel], for infants, objectants.

DELEHANTY, S. Deceased died February 23, 1917, leaving a will executed January 4, 1917. In his will deceased " declares it to be his wish and desire that after all his debts, funeral and legal expenses have been paid from whatever money he may leave at the time of his death, that then whatever may be the amount of money left over after the aforesaid expenses have been paid, that then whatever may be left, that the said amount of money shall be invested in some good and reliable investment, (and not in any business venture of any kind whatever) but some institution or bank, whereby a sufficient amount of interest may accrue annually, that will insure my two sisters Mrs. Clara Ringswald and Miss Agnes Walsh, an annual sum of money, * * * and that after the death of both of my sisters that then the original amount of money invested according to my last wish and desire, may be divided among my next of kin." His sister, Clara Ringswald, was named executrix. She qualified and acted under the will until her death on February 13, 1937. Her sister, Agnes Walsh, had predeceased her. The account here for settlement is rendered by the administrator of Clara Ringswald.

The major objection for consideration is that which seeks to surcharge the deceased executrix with the sum of $9,000 invested by her in a mortgage on premises in Kings county. Attack on this investment is made on the ground that the terms of the will forbade a mortgage investment of any kind, on the ground that the investment was unlawful because the amount of the mortgage exceeded the permissible limit and on the ground that the investment was in any case imprudently made.

There is substance to the argument that deceased gave direction to keep his money at interest in a bank or like institution, for he envisaged the distribution to his next of kin of " the original amount of money." Deceased left only money in a savings bank, cash in his own possession and a certificate showing that he had deposited at interest with a trust company the major part of his funds. The inartificial language of his home-made will is entirely consistent with an intention that his resources be kept absolutely fluid and free from the hazards of capital fluctuation. But it is not necessary to rest the decision on so narrow a ground.

The proof respecting the investment shows that the executrix was guilty of gross negligence in the making of it and that it was not a lawful investment for her to make as a fiduciary. She was the beneficiary of income and she had a personal interest in establishing an income return at the highest possible level. She apparently had confidence in the stability of mortgage companies which issued guaranties with mortgages which they sold. She disregarded the affirmative advice to the contrary given her by her attorney and selected this particular investment without investigation and apparently in sole reliance upon the written guaranty which accompanied it. The court finds as a fact that the property ostensibly securing the mortgage was not worth fifty per cent more than the face of the mortgage at the time of the investment. The court holds, too, that the investment was improvidently and imprudently made because the character of the land and its earning capacity made default under the mortgage practically certain.

The mortgage had its origin in a devious procedure by which a wholly-owned subsidiary of the mortgage company took in the land on foreclosure of a pre-existing mortgage and then executed to its master, the mortgage company, a mortgage for as large a sum as the mortgage company could foist upon an unsuspecting member of the public. The records in relation to the handling of the original mortgage and the property and the execution of the new mortgage show that there was no real support for the surface representations of the mortgage company as to value and as to the capacity of the property to earn its way. The slightest investigation would have disclosed the actual fact that the mortgage represented substantially the entire value in the property. The actual history of the property while in the process of foreclosure and of ownership by the subsidiary of the mortgage guaranty company demonstrates that the investment was ultra hazardous. It may have been the best of a bad lot of investments offered by this mortgage company to the fiduciary. Ascertainment of that fact did not suffice to meet the requirements of her fiduciary obligation. Her lawyer advised her against making any investment in a security issued by this particular guaranty company. She overruled him and took the investment without any investigation of her own.

As was said in *Matter of Dalsimer* (251 App. Div. 385, 390; affd., 277 N. Y. 717), " a fiduciary who invests in securities within the classes specified by statute is not free from liability for resultant loss if he fails to exercise reasonable judgment and discretion in making the investment. (*Delafield v. Barret*, 270 N. Y. 43, 48; *Matter of Jacobs*, 152 Misc. 139; *Matter of Randolph*, 134 N. Y. Supp. 1117; affd., 150 App. Div. 902; appeal dismissed, 207 N. Y.

685.) A trustee by acceptance of the office assumes the duty of satisfying himself with reasonable care of the soundness of an investment at the time it was made and *cannot merely or principally rely on the guarantee of a title company but must rely primarily on the real security which the law requires of an investment of this character* and then the guarantee may afford added security." (Italics supplied.) Tested by these principles the conduct of the executrix-trustee in making the investment here in question must be held to have been grossly negligent and improvident. The objections thereto are in all respects sustained.

The account shows that bond premiums aggregating $799.81 were paid from corpus. These payments were made from September 4, 1917, to May 11, 1931. The special guardian concedes such charge to be proper only in the case of the first premium of sixty dollars covering the bond during a one-year administration period, and objects to all other charges of bond premiums to principal account. The accounting party not only defends the payments of all the premiums from the capital account up to 1931 as scheduled but in addition applies at this time for credit based on all the remaining payments made by the deceased trustee from her personal funds from 1931 to 1937. These latter payments aggregate $229.19.

It was decided by Surrogate Coffin in both *Jenkin* v. *Shaffer* (6 Dem. 59 [1888]) and *Matter of Patterson* (1 Powers, 3 [1891]) that when a fiduciary furnished a bond from a commercial source and thus found himself bound to pay a premium, the obligation was purely personal and could not be charged against the estate in any way. The Legislature (Laws of 1892, chap. 465) thereupon amended section 3320 of the Code of Civil Procedure to authorize reimbursement to the fiduciary for this expense. This statute is now section 286 of the Surrogate s Court Act. It says: " A guardian, trustee, executor or administrator required by law to give a bond as such, may include as a part of his necessary expenses such reasonable sum, not exceeding one per centum per annum upon the amount of such bond paid his surety thereon, as such court or judge allows."

The surety of the fiduciary is participating in this proceeding and argues that when the cited statute is read in conjunction with section 222 of the Surrogate's Court Act (authorizing payment of expenses incurred by trustees and other fiduciaries), it appears that the Legislature intended to make bond premiums a charge upon corpus unless an express direction to the contrary was given by deceased. The cited statutes do not expressly indicate whether corpus or income shall bear the burden of a trustee's bond premiums.

The cases, on the other hand, are entirely in agreement on the subject. They hold uniformly that the bond premiums paid by a testamentary trustee are a charge on income. (*Matter of Boyle*, 99 Misc. 418, 420; *Matter of Shepard*, 136 id. 218, 220; *Matter of Boyle*, 140 id. 523, 526; *Matter of Brewster*, 148 id. 390; *Matter of Blake*, 156 id. 619, 620; *Matter of Frost*, 184 App. Div. 702, 704.) In one case where the court of first instance adopted the opposite principle the Appellate Division reversed. (*Matter of Parsons*, 143 Misc. 368; modfd. as to the point in question, 238 App. Div. 883.)

The surety, nevertheless, argues that the public policy of the State of New York requires that bond premiums should be paid from the trust's capital account. It also contends that the surety's contract implies that the premiums shall be so paid and that any contrary ruling by the court would be an unconstitutional impairment of contractual obligations. It is evident that these contentions are irrelevant to the present issue. The surety overlooks the fact that the contract of surety and trustee is purely personal to the latter so far as payment of bond premiums is concerned. The fiduciary must in the first place pay to the surety the premiums which he contracts to pay. He may then secure reimbursement from the trust in a proper amount and from a proper source. (Cf. *Matter of Fromberg*, 260 N. Y. 430.) There is no question here of public policy nor are the surety's contractual rights in any way involved. If the trustee pays a sum from the estate in his charge which the court finds excessive or if he applies moneys from the wrong account in discharge of the premium obligations, the court simply rectifies the waste by means of a suitable surcharge. The surety has no concern with the matter except to make good the surcharge if the principal fails so to do. The objections to the payment of bond premiums from capital account in the sum of $739.81 are sustained. No credit will be allowed the fiduciary against capital account in connection with premiums paid after 1931 from her personal funds.

Objections are made to the allowance of commissions as claimed in Schedule K of the account. The commissions as thus scheduled will be allowed but only as an offset to the surcharges here directed. The ruling made in respect of the mortgage investment requires reimbursement to the estate of the full amount of $9,000 with interest at the legal rate thereon from the death of Clara Ringswald on February 13, 1937. Against that liability the commissions will be offset. When the surcharge is paid the realty resulting from foreclosure of the mortgage in controversy may be taken over for account of the deceased fiduciary. Until full payment

of the surcharge it stands as security for such payment. In addition any net income produced out of the real estate from and after February 13, 1937, which is in the hands of the succesors fiduciary will also be available as a credit against the surcharge. Counsel for the accounting administrator of the deceased executrix-trustee will be allowed a bill of costs for the preparation of the account but not for any time spent in the effort to justify the transactions of the deceased fiduciary in respect of the mortgage investment.

The effect of the foregoing is that the objection of the special guardian marked first is sustained; the second is sustained; the third is marked withdrawn; the fourth is sustained; the fifth requires no ruling because of the ruling on objection first and the surcharge which is consequent upon that ruling. Objection first of Evelyn Brown and others is sustained to the degree stated herein; objection second is sustained; objection third requires no separate ruling since it is a restatement of the earlier objections; objection fourth requires no ruling because of the surcharge for the making of the original investment; objection fifth is overruled — with the limitation stated herein as to use of the credit; objection sixth A is disposed of by the ruling made on objection first; objection sixth B is sustained subject to the allowance of a bill of costs as hereinabove authorized; and objection seventh needs no separate ruling since the prior rulings dispose of the questions raised thereby.

The matters raised by the answer of the surety have been necessarily ruled on by decision on the objections. Something should be said, however, respecting the surety's contention that objectants heretofore elected to affirm the investment in the bond and mortgage covering 8004 Fourteenth avenue, Brooklyn. This election is said to have occurred when a successor trustee was appointed after the death of the original trustee. This was not an election of remedies. It was merely a method for getting the estate assets in the hands of some responsible fiduciary. The proof shows that the successor trustee has made no payments to remaindermen. The net rents have been held intact for the purpose of getting a ruling from the court during the present proceeding as to what their application should be. Election means a choice between two incompatible alternatives. The mere application for appointment of a trustee to take over a *res* which otherwise would lack responsible control is not an election to approve the conduct of a predecessor fiduciary. This defense of the surety is in all respects overruled.

Submit, on notice, decree settling the account accordingly.